UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
----------------------------------------x
                                        :
RUNNING DEER VAN THOMAS GREEN,          :
                                        :
     Plaintiff,                         :
                                        :
v.                                      :  Lead Consolidated Case No.
                                        :     3:03CV00601(AWT)
CUSHMAN & WAKEFIELD OF CONNECTICUT,     :
GLASTONBURY TENNIS CLUB, WESLEYAN       :
UNIVERSITY and its president,           :
DOUGLAS BENNETT, and MICHAEL AUGERI     :
d/b/a TOWN & COUNTRY AUTO SALES,        :
INC.,                                   :
                                        :
     Defendants.                        :
                                        :
----------------------------------------x
```

## RULING ON MOTIONS TO DISMISS

The plaintiff, Running Deer Van Thomas Green, a Wangunk band Indian tribe member, brings this action pro se and in forma pauperis. The operative complaint[1] appears to allege that Indian burial grounds in Glastonbury and Portland, Connecticut have been desecrated; that from 1799 to 2003 tribal lands were unlawfully transferred in violation of 25 U.S.C. § 177; and that agreements regarding 300 acres of land set aside for the native heirs of the Wangunk band of Indians were not honored.

Defendants Wesleyan University ("Wesleyan"), Douglas Bennett ("Bennett") and Michael Augeri d/b/a Town & Country Auto Sales,

---

[1] The operative complaint in the lead consolidated case includes Doc. Nos. 17, 15, 9, 3, 2 in Case No. 3:03CV00601, and Doc. Nos. 5, 3, 2 in Case No. 3:03CV00602.

Inc. ("Augeri") have moved to dismiss the plaintiff's claims, inter alia, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, arguing that the plaintiff has neither constitutional nor statutory standing.[2]

The standards for dismissals pursuant to Rules 12(b)(1) and 12(b)(6) are substantially identical.[3]  See Moore v. PaineWebber Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999).  The standard requires the court to

> accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.  The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief.

Jaghory v. New York State Dept. of Educ., 131 F.3d 326, 329 (2d Cir. 1997)(internal citations and quotation marks omitted).  "This standard is applied with even greater force where . . . the

---

[2] The defendants also argue that the plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim pursuant to 25 U.S.C. § 177 and pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) for failing to state any claim for which relief may be granted, and as to the claims against Bennett, pursuant to Rule 12(b)(5) for failure to serve process on him in accordance with Rule 4(e). Because the court is granting the motions based on lack of standing, it does not reach these issues.

[3] However, for a Rule 12(b)(1) motion, the party invoking jurisdiction has the burden of proof.  See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003).  Also, a dismissal pursuant to 12(b)(1) allows for the possibility of repleading the action, unlike a ruling on the merits.  See Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987).

complaint is submitted pro se." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994)(citation omitted). When considering the sufficiency of the allegations in a pro se complaint, the court applies "less stringent standards than [those applied to] formal pleadings drafted by lawyers . . . ." Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996). Furthermore, the court should interpret the plaintiff's complaint to raise the strongest arguments that it suggests. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

The jurisdictional question of standing must precede a determination of the merits unless the merits are so intertwined with standing as to make any distinction between the two exceedingly artificial. See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 127 (2d Cir. 2003). The Second Circuit has recognized that standing and the merits are not so intertwined where an individual tribe member files a claim that ultimately turns on a violation of 25 U.S.C. § 177, the Nonintercourse Act, which provides a cause of action only for collective Indian tribes, not individual tribe members. See Thompson v. County of Franklin, 15 F.3d 245, 247-49, 252 (2d Cir. 1994).

Article III standing, at an irreducible constitutional minimum, requires the following:

> (1) that the plaintiff have suffered an "injury in fact," i.e., an injury that is "concrete and particularized" as well as "actual or imminent," rather than merely

>"conjectural or hypothetical"; (2) that there be a "causal connection between the injury and the conduct complained of," i.e. that the injury be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and (3) that it be likely that the injury complained of would be "redressed by a favorable decision."

St. Pierre v. Dyer, 208 F.3d 394, 401 (2d Cir. 2000)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

"In addition to the minimal constitutional requirements for standing, there are court-imposed prudential limits to invoking the jurisdiction of the federal courts. The plaintiff must (1) be asserting its own legal rights, and not those of a third party, (2) be asserting, in addition to a redressable injury, a particularized grievance, and (3) be asserting a claim that falls within that zone of interests the statute aims to protect or regulate." Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 58 (2d Cir. 1994)(citing Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474-75 (1982)). Also, "[t]o establish a *prima facie* case based on a violation of the Act, a plaintiff must show that (1) it is an Indian tribe, (2) the land is tribal land, (3) the United States has never consented to or approved the alienation of this tribal land, and (4) the trust relationship between the United States and the tribe has not been terminated or abandoned." Golden Hill, 39 F.3d at 56.

Here, the plaintiff alleges the following:

4

> [four] Indian skeletons were found in Portland in June 14, 1899 in digging a trench for water pipes at the house of Federich Gladwin on 36 Indian Hill Ave. in Portland/Glastonbury, Portland's continuance to build on sacred sites, and the disregard, and disrespect to myself and our people cultural ways
>
> Several skeletons have been plowed out repairing the roads in the Portland vicinity, 40 Indian Hill Ave. and a continuance to build on unmarked Indian graves.
>
> Glastonbury, Portland, and Middletown has been the site of Native American activity for thousands of years, and evidence of this habitation makes the area significant to complaint town of Glastonbury/Portland continuance to disturb, unmarked grave sites with local residential construction projects.
>
> Four burial were found in the back yard of 46 Indian Hill Ave. in the 1939's these area's were and are part of the whole three hundred [acres] set a side for Native Americans and heirs of Wangunk tribe

(Am. Compls. at 2-3 (Doc. Nos. 5 (Case No. 3:03cv602); 9, 17 (Case No. 3:03cv601)).)  Even when liberally construed, these allegations fail to establish any causal connection between the injury and/or conduct complained of and some challenged action of defendants Wesleyan, Bennett and/or Augeri.

The plaintiff also alleges the following:

> (a) from 1799-2003 lands were transferred in violation of federal law.
> (b) 1799-2003 lands were transferred with out [sic] signatures and without deeds.
> (c) lands were transferred without general court approval.
> (d) sec.,5 - violation of section five of the non-trade intercourse act of July 22, 1790
> (E) [sic] 300 arces [sic] were set aside for the native heirs of wangunk band or relatives/agreements were not respected

(Am. Compls. at 4 (Doc. Nos. 5 (Case No. 3:03cv602); 9, 17 (Case No. 3:03cv601)).)  The plaintiff attaches a lengthy petition to

5

the Bureau of Indian Affairs regarding the history of land transfers of the Wangunk Indian tribe.  The plaintiff also attaches an unsigned and undated description of land sold to certain Indians.  According to this description, in 1675, the town of Middletown granted to twelve Indians and their heirs forever, 300 acres of land at or near a place called "Wongunk.in."  As of the date (which is unspecified) of the document, the owners of the land were about forty of fifty in number, and 13 of the owners, according to the description, had returned to reclaim their birth right.  One of the owners listed is Betty Cuschoy.  According to the petition, Betty Cuschoy was the great-great-aunt of the plaintiff.

   The Wangunk, according to the petition, lived in the eastern part of Middletown, Connecticut on the bank of a bend in the Connecticut River from sometime before 1650.  The first clear reference to the Wangunk area, according to the petition, is in the colonial records of October, 1664.  The plaintiff claims that, in 1673, the English granted to the Wangunk the river bank and the south Glastonbury meadows.  The petition states that, in 1691, the first officially recorded parcel of the Wangunk meadow land was sold.  According to the petition, the years from 1698 to 1713 show no Indian land transactions.  The petition recounts how, from 1713 onward, certain individual members of the Wangunk tribe sold their land.  The petition describes a variety of deeds, often without specifically referencing the particular

6

parcel of land sold.  In December 1728, according to the petition, a highway was laid out on Indian land.  Later in 1740, a chunk of land bisected and rendered useless by the highway was sold by a group of Indians, including one Wangunk Indian.  The petition indicates that by the 1800's only a handful of Wangunks remained in Middletown.  The petition further recounts the history of the Wangunk, including the family history of the plaintiff.  Nowhere in the petition, however, is there any indication that the plaintiff has an ownership interest in any of the land, nor any indication of how Wangunk land was taken by defendants Wesleyan, Bennett and/or Augeri in violation of 28 U.S.C. § 177 or otherwise.  Thus, here again, the plaintiff fails to set forth allegations that establish any causal link between the injury and/or conduct complained of and some challenged action of defendants Wesleyan, Bennett and/or Augeri.

At a status conference, the plaintiff represented that his grandfather, George W. Cohen, owned the property at issue as tribal land, that early settlers set aside the land by treaty and agreement, and that the plaintiff identified the defendants in these cases based on a title search of that land.  However, although the title search performed by Richard S. Johnson on George W. Cohen's property referenced some land on Hebron Avenue and at 228 Oak Street, Attorney Johnson wrote the following:

> [A]ny interest remaining in the heirs of George Cohens has been extinguished by operation of the Connecticut Marketable Record Title Act (C.G.S. Sec. 47-336, et

    seq.).  In particular, Section 47-33e makes it clear that a 40 year marketable record title extinguishes all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title.  All such interests, claims or charges . . . are statutorily declared to be null and void.

    Following the foreclosure, . . . [there were various conveyances].  Any of these conveyances may serve as a sufficient root of title under the Marketable Record Title Act, extinguishing prior interests.

    Over the years, the Cohens property has developed into a light industrial area.  9.9 acres was taken by the State of Connecticut for Route 2 in 1962, and a portion was conveyed to the Town of Glastonbury for the relocation of Oakwood Road in 1959.  For a number of years the property was owned by Furlong Lumber, so that it appears that the use as a lumber yard continued up until fairly recently.  The remaining property now lies on both sides of Oakwood Road and comprises all or parts of 228 Oak Street (Glastonbury Tennis Associates) and 95 and 107 Oakwood Road (Media Properties and Oakwood Associates, LLC).

(See Letter from Attorney Richard S. Johnson to Attorney Donald E. Freeman 2 (Apr. 25, 2000), Compl. (Doc. No. 3 (Case No. 3:03cv601), Attach.))

Again, even when liberally construed, these allegations fail to establish any causal link between the injury and/or conduct complained of and some challenged action of defendants Wesleyan, Bennett and/or Augeri.

In addition, to state a claim pursuant to 25 U.S.C. § 177, the plaintiff must allege, among other things, that it is an Indian tribe.  See Golden Hill, 39 F.3d at 56.  Individual Indians do not fall within section 177's zone of protected interests.  See id. at 54 n.1.  Claims by them pursuant to

section 177 must be dismissed.  See James v. Watt, 716 F.2d 71, 72 (1st Cir. 1983).  Thus, the plaintiff also fails to establish statutory standing to sue because, although he alleges that he is a member of the Wangunk tribe, he fails to set forth allegations that establish that he represents or has authority to act on behalf of the tribe, and the Wangunk tribe is not a plaintiff in this action.

Based on the foregoing, the plaintiff's claims must be dismissed.  Accordingly, the defendants' motions to dismiss (Doc. Nos. 34 and 36) are hereby GRANTED.  The plaintiff's complaints are hereby dismissed without prejudice to the plaintiff filing an amended complaint within thirty days which demonstrates, inter alia, that he has standing.

It is so ordered.

Dated this 30th day of September 2005, at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge