UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------x
                                     :
RUNNING DEER VAN THOMAS GREEN,       :
                                     :
     Plaintiff,                      :
                                     :
v.                                   : Lead Consolidated Case No.
                                     :     3:03CV00601(AWT)
CUSHMAN & WAKEFIELD OF CONNECTICUT   :
and GLASTONBURY TENNIS CLUB,         :
                                     :
     Defendants.                     :
                                     :
-------------------------------------x
```

### ORDER OF DISMISSAL RE REMAINING DEFEDANTS

The plaintiff, Running Deer Van Thomas Green, a Wangunk band Indian tribe member, brings this action pro se and in forma pauperis. The operative complaint[1] appears to allege that from 1799 to 2003 tribal lands were unlawfully transferred in violation of 25 U.S.C. § 177 and that agreements regarding 300 acres of land set aside for the native heirs of the Wangunk band of Indians were not honored.

Failure of subject matter jurisdiction is not waivable and may be raised by the court sua sponte. Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000). "If subject matter is lacking, the action must be dismissed." See id. (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)).

---

[1] The operative complaint in the lead consolidated case includes Doc. Nos. 3, 15 and 17 from Case No. 3:03CV00601.

Former defendants Wesleyan University, Douglas Bennett and Michael Augeri d/b/a Town & Country Auto Sales, Inc. moved to dismiss the plaintiff's claims, inter alia, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, arguing that the plaintiff has neither constitutional nor statutory standing. On September 30, 2005, the court granted their motions to dismiss, concluding, inter alia, that the plaintiff has failed to establish statutory standing to sue.  The plaintiff was given thirty days to file an amended complaint demonstrating, inter alia, that he has standing.  The plaintiff has taken no action in response to the court's September 30, 2005 ruling.[2]  The only remaining defendants are Cushman & Wakefield of Connecticut and Glastonbury Tennis Club.

Article III standing, at an irreducible constitutional minimum, requires the following:

> (1) that the plaintiff have suffered an "injury in fact," i.e., an injury that is "concrete and particularized" as well as "actual or imminent," rather than merely "conjectural or hypothetical"; (2) that there be a "causal connection between the injury and the conduct complained of," i.e. that the injury be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and (3) that it be likely that the injury complained of would be "redressed by a favorable decision."

St. Pierre v. Dyer, 208 F.3d 394, 401 (2d Cir. 2000) (citing

---

[2] See Ruling on Motions to Dismiss (Doc. No. 40).

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

"In addition to the minimal constitutional requirements for standing, there are court-imposed prudential limits to invoking the jurisdiction of the federal courts.  The plaintiff must (1) be asserting its own legal rights, and not those of a third party, (2) be asserting, in addition to a redressable injury, a particularized grievance, and (3) be asserting a claim that falls within that zone of interests the statute aims to protect or regulate." Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 58 (2d Cir. 1994) (citing Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474-75 (1982)).  Also, "[t]o establish a *prima facie* case based on a violation of the Act, a plaintiff must show that (1) it is an Indian tribe, (2) the land is tribal land, (3) the United States has never consented to or approved the alienation of this tribal land, and (4) the trust relationship between the United States and the tribe has not been terminated or abandoned." Golden Hill, 39 F.3d at 56.

Here, the plaintiff alleges the following:

>     (a) from 1799-2003 lands were transferred in violation of federal law.
>     (b) 1799-2003 lands were transferred with out [sic] signatures and without deeds.
>     (c) lands were transferred without general court approval.
>     (d) sec.,5 - violation of section five of the non-trade intercourse act of July 22, 1790

> (E) [sic] 300 arces [sic] were set aside for the native heirs of wangunk band or relatives/agreements were not respected

(Am. Compl. at 4 (Doc. No. 9 (Case No. 3:03cv601)).) The plaintiff attaches a lengthy petition to the Bureau of Indian Affairs regarding the history of land transfers of the Wangunk Indian tribe. The plaintiff also attaches an unsigned and undated description of land sold to certain Indians. According to this description, in 1675, the town of Middletown granted to twelve Indians and their heirs forever, 300 acres of land at or near a place called "Wongunk.in." As of the date (which is unspecified) of the document, the owners of the land were about forty of fifty in number, and 13 of the owners, according to the description, had returned to reclaim their birth right. One of the owners listed is Betty Cuschoy. According to the petition, Betty Cuschoy was the great-great-aunt of the plaintiff.

The Wangunk, according to the petition, lived in the eastern part of Middletown, Connecticut on the bank of a bend in the Connecticut River from sometime before 1650. The first clear reference to the Wangunk area, according to the petition, is in the colonial records of October, 1664. The plaintiff claims that, in 1673, the English granted to the Wangunk the river bank and the south Glastonbury meadows. The petition states that, in 1691, the first officially recorded parcel of the Wangunk meadow land was sold. According to the petition, the years from 1698 to

1713 show no Indian land transactions.  The petition recounts how, from 1713 onward, certain individual members of the Wangunk tribe sold their land.  The petition describes a variety of deeds, often without specifically referencing the particular parcel of land sold.  In December 1728, according to the petition, a highway was laid out on Indian land.  Later in 1740, a chunk of land bisected and rendered useless by the highway was sold by a group of Indians, including one Wangunk Indian.  The petition indicates that by the 1800's only a handful of Wangunks remained in Middletown.  The petition further recounts the history of the Wangunk, including the family history of the plaintiff.

At a status conference, the plaintiff represented that his grandfather, George W. Cohen, owned the property at issue as tribal land, that early settlers set aside the land by treaty and agreement, and that the plaintiff identified the defendants in these cases based on a title search of that land.  However, although the title search performed by Richard S. Johnson on George W. Cohen's property referenced some land on Hebron Avenue and at 228 Oak Street, Attorney Johnson wrote the following:

> [A]ny interest remaining in the heirs of George Cohens has been extinguished by operation of the Connecticut Marketable Record Title Act (C.G.S. Sec. 47-336, et seq.).  In particular, Section 47-33e makes it clear that a 40 year marketable record title extinguishes all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of

>    the root of title.  All such interests, claims or
>    charges . . . are statutorily declared to be null and
>    void.
>
>    Following the foreclosure, . . . [there were
>    various conveyances].  Any of these conveyances may
>    serve as a sufficient root of title under the Marketable
>    Record Title Act, extinguishing prior interests.
>
>    Over the years, the Cohens property has developed
>    into a light industrial area.  9.9 acres was taken by
>    the State of Connecticut for Route 2 in 1962, and a
>    portion was conveyed to the Town of Glastonbury for the
>    relocation of Oakwood Road in 1959.  For a number of
>    years the property was owned by Furlong Lumber, so that
>    it appears that the use as a lumber yard continued up
>    until fairly recently.  The remaining property now lies
>    on both sides of Oakwood Road and comprises all or parts
>    of 228 Oak Street (Glastonbury Tennis Associates) and 95
>    and 107 Oakwood Road (Media Properties and Oakwood
>    Associates, LLC).

(See Letter from Attorney Richard S. Johnson to Attorney Donald E. Freeman 2 (Apr. 25, 2000), Compl. (Doc. No. 3 (Case No. 3:03cv601), Attach.))

Pursuant to 25 U.S.C. § 177, the plaintiff must allege, among other things, that it is an Indian tribe. See Golden Hill, 39 F.3d at 56.  Individual Indians do not fall within section 177's zone of protected interests. See id. at 54 n.1.  Claims by them pursuant to section 177 must be dismissed. See James v. Watt, 716 F.2d 71, 72 (1st Cir. 1983).  Thus, the plaintiff fails to establish statutory standing to sue because, although he alleges that he is a member of the Wangunk tribe, he fails to set forth allegations that establish that he represents or has authority to act on behalf of the tribe, and the Wangunk tribe is

6

not a plaintiff in this action.

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court shall dismiss proceedings in forma pauperis "at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Here, the action fails to state a claim against the remaining defendants for which relief may be granted.

Accordingly, this case is hereby DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as to defendants Cushman & Wakefield of Connecticut and Glastonbury Tennis Club.

The Clerk shall close this case.

It is so ordered.

Dated this 21st day of February 2006, at Hartford, Connecticut.

/s/Alvin W. Thompson
_____
Alvin W. Thompson
United States District Judge